| | |
|---|---|
| **UNITED STATES DISTRICT COURT**<br>**EASTERN DISTRICT OF NEW YORK**<br>----------------------------------------------------------X<br>TERRY SIDNEY,<br><br>        Plaintiff,<br><br>   -against-<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant.<br>----------------------------------------------------------X | For Online Publication Only<br><br><br><br>**MEMORANDUM &**<br>**ORDER**<br>18-cv-645 (JMA) |

FILED
CLERK
12/18/2020 10:10 am
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**APPEARANCES:**

**Osborn Law**
*Attorneys for the Plaintiff*
43 West 43rd Street, Ste 131
New York, NY 10036
  By: Daniel Adam Osborn, Esq., Of Counsel.

**United States Attorneys Office, Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
  By: Arthur Swerdloff, Assistant United States Attorney.

**AZRACK, United States District Judge**:

On January 30, 2018, the Plaintiff Terry Sidney (the "Plaintiff" or the "Claimant") commenced this appeal pursuant to §§ 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant, the Commissioner of the Social Security Administration (the "Defendant" or the "Commissioner"), that he was ineligible to receive Social Security disability benefits.

Presently before the Court are the parties' cross motions, pursuant to Federal Rule of Civil procedure ("FED. R. CIV. P.") 12(c) for a judgment on the pleadings. For the reasons that follow, the Court denies the Plaintiff's motion, grants the Defendant's cross-motion, and closes the case.

1

## I.  BACKGROUND

The Plaintiff, age 47, applied for disability benefits in August 2014.  He alleged disability since August 2013, after status-post total left hip replacement, right hip drilling, and right knee impairment.  He claimed that he suffered from a variety of maladies: bilateral hip pain; right knee pain; left arm status-post surgical repair; right knee osteoarthritis; joint pain; bilateral retinal vasculitis; retinal pigment epithelium hypertrophy; suspended bilateral glaucoma; type II diabetes; and hyperlipidemia.  He further alleged that he had a limited education, with prior work experience as a carpet layer and a sales clerk, and that he had not worked since his disability onset date.

His claim was denied on October 15, 2014, and he requested a hearing.  The Plaintiff appeared with counsel before Administrative Law Judge Alan B. Berkowitz (the "ALJ") on November 19, 2013.  On February 7, 2017, the ALJ issued a written decision where he found that the Plaintiff was not disabled under the Act through September 6, 2016.  The ALJ further found that the Plaintiff was disabled as of September 7, 2016, pursuant to Rule 201.10 of the Medical-Vocational Guidelines.

The Plaintiff sought review by the Appeals Counsel.  On December 5, 2017, the Appeals Counsel ruled that it would not further review the ALJ's decision.  The ALJ's decision thus became the final decision of the Commissioner on that date.

On January 30, 2018, the Plaintiff brought the present action.  On August 27, 2019, the parties submitted the Plaintiff's Rule 12(c) motion and the Defendant's Rule 12(c) cross-motion as fully briefed to the Court.

For purposes of these motions, familiarity with the underlying administrative record is presumed.  The Court's discussion of the evidence will be limited to the specific challenges and

responses presently raised by the Plaintiff and the Defendant. References to the record are denoted as "R."

## II. DISCUSSION

The Plaintiff raises issues, arguing that: (1) the ALJ improperly relied on the testimony of a vocational expert; (2) in assessing the Plaintiff's residual functional capacity ("RFC"), the ALJ violated the treating physician rule with regard to two of the Plaintiff's doctors; and (3) in assessing the Plaintiff's RFC, the ALJ erred in failing to account for the Plaintiff's obesity, as well as the side effects of the Plaintiff's taking Oxycodone. For the following reasons, the Court denies the Plaintiff's motion, grants the Defendant's cross-motion, and closes the case.

### A. Social Security Disability Standard

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person may only be disabled if his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. 20 C.F.R. § 404.1520; *see Rosa v Callahan*, 168 F.3d 72, 77 (2d Cir. 1999). In this analysis, a claimant will be found disabled if the Commissioner determines:

> (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

3

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2006) (second alteration in original) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)). As part of the fourth step, the Commissioner determines the claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R. § 404.1520(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate "there is work in the national economy that the claimant can do." *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam). *See also Campbell v. Astrue*, No. 12-CV-5051 (ADS), 2015 WL 1650942, at *7 (E.D.N.Y. Apr. 13, 2015) (citing *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999)).

### B. <u>Scope of Review</u>

In reviewing a denial of disability benefits by the SSA, the role of the district court is not to review the record *de novo*, but instead to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole, or are based on an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Snell v. Apfel*, 177 F.3d 128, 132 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir, 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." *State of New York ex rel. Bodnar v. Sec'y of Health and Human*

*Servs.*, 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings . . . having rational probative force." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

   C. **Application**

      1. **The Vocational Expert**

Plaintiff raises arguments concerning the testimony of Vocational Expert David Vandergoot ("VE Vandergoot"). ECF No. 17 at 16. The Court first provides a summary of VE Vandergoot's testimony, and then analyzes the Plaintiff's arguments.

At issue is the effect of VE Vandergoot's testimony at the fifth stage of the sequential process. At step four, the ALJ determined the Plaintiff had the RFC to perform sedentary work in that he could: sit for thirty minutes at a time, with two-minute repositioning breaks; occasionally bend and perform postural activities; and periodically use his left non-dominant hand for grasping, gripping and performing gross motor skills. *Id.* at 14, 18.

The following exchange occurred at the beginning of VE Vandergoot's testimony:

> Q Will your testimony be consistent with the DOT, the SCO, and supporting publications, and if not so consistent, you'll advise me of [any] inconsistency and how you resolved it?
>
> A I will.

R. at 44.

The ALJ then proceeded to ask VE Vandergoot about a hypothetical individual who could: (a) perform sedentary work with the ability to sit for 30 minutes at a time with a two-minute break every 30 minutes (b) occasionally bend at the waist; and (c) occasionally stoop, crouch, crawl, kneel, squat, and climb. *Id.* at 47. This hypothetical tracked what would become

the ALJ's RFC ruling, except for the limitation that Plaintiff could only occasionally use his non-dominant hand.

VE Vandergoot testified that the hypothetical individual could perform the unskilled sedentary work of addresser, waxer, and order clerk. *Id.* at 48–49. VE Vandergoot also testified that a significant number of those three positions existed in the national economy—with 13,000, 9,000, and 19,000 positions, respectively. The ALJ then probed this hypothetical further, asking whether an individual who is "only able to occasionally use their non-dominant hand for grasping, gripping, [and] gross motor skills" could perform sedentary work. R. at 49. In response, the following exchange occurred:

> A I would say the addresser position would still be all right because (INAUDIBLE) the hand that's going to be used the most is the dominant hand.
>
> Q Okay
>
> A And that's only at the frequent level.
>
> Q Yeah
>
> A It would also be the same with the waxer. This is primarily using the dominant hand.
>
> Q Okay. Anything else?
>
> A And we'll look at the order clerk. That should also be fine in terms of the use of the dominant hand being the primary hand that would be used.
>
> Q And generally speaking under the regulations and Social Security, to do sedentary work, you [do] not need to have full use of both hands?
>
> A It does say that for most of the jobs, you would need both hands.

*Id.* at 50.

The ALJ later returned to the addresser position, asking if the job involved the use of a computer. *Id.* at 51–52.. VE Vandergoot replied in the affirmative, adding that "it could even be done by hand." *Id.* at 51.

In his decision, the ALJ concluded that VE Vandergoot's testimony is consistent with the information contained in the Directory of Occupational Titles ("DOT"). *Id.* at 17–18.

The Plaintiff's arguments concerning the VE's testimony are somewhat ill-defined. The Plaintiff appears to argue that VE Vandergoot's testimony was inconsistent with the DOT with regard to the three proffered positions, which—according to the Plaintiff—triggered the ALJ's duty to question the VE further about these potential inconsistencies. *Id.* at 16–17. The Plaintiff contends, in his opening brief, that "the ALJ did not ask VE Vandergoot to advise him of any conflicts with the information in the DOT and his opinion so it is entirely unclear whether the jobs of addresser, waxer, and order clerk require full use of both hands." *Id.* at 17.

These arguments are not persuasive.

As an initial matter, the ALJ did, in fact, ask VE Vandergoot to advise him of any conflicts between his testimony and the information in the DOT. *Id.* at 17–18 & n.5. The ALJ expressly asked VE Vandergoot if his upcoming testimony would comport with the DOT and instructed VE Vandergoot to identify any conflicts. R. at 44. The Plaintiff's reply brief asserts, without citation to any authority, that that this exchange was insufficient to satisfy the ALJ's obligations. The Plaintiff, however, waived this argument by not raising this argument in his opening brief. Moreover, as explained below, the ALJ had no duty to inquire any further with the VE because there was not even an apparent conflict between the DOT and the VE's testimony.

7

When there is an "apparent conflict" between the testimony of a VE and the DOT, the ALJ is "obliged to identify and resolve the apparent conflict . . . even if there is a chance that, upon inquiry, no actual conflict would have emerged." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87, 93 (2d Cir. 2019); *see* SSR 00-4p, 65 Fed. Reg. 75759 (Dec. 4, 2000) ("At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is . . . consistency [between the VE's testimony and the DOT].").

First, the Plaintiff cites to VE Vandergoot's statement that most sedentary jobs require the full use of both hands. *Id.* at 16. This point is not persuasive because, just prior to making this general statement about "most" sedentary jobs, VE Vandergoot explained that the three specific jobs at issue did not require the full use of both hands. The VE's later, more general, testimony did not conflict with his earlier more specific testimony that focused on those three jobs. Moreover, even VE Vandergoot's general testimony about "most" sedentary jobs requiring the full use of both hands did not indicate that such a requirement was found in the DOT. As such, this testimony does not give rise to an apparent conflict.

Second, the Plaintiff argues that the descriptions of these three positions in the DOT conflict with the VE's testimony. As explained below, there was no apparent conflict between the DOT and the VE's testimony that necessitated further inquiry by the ALJ.

For the job of addresser, the DOT states that an addresser "[a]dresses by hand or typewriter, envelopes, cards, advertising literature, packages, and similar items for mailing" and "[m]ay [also] sort mail." DOT Code 209.587-018. VE Vandergoot explained that this job involves reaching, handling, and fingering at the frequent level. *Id.* The Plaintiff argues that it is "difficult, if not impossible," for one to imagine that he could perform this work when he could

8

only occasionally use his non-dominant hand. *Id.* at 17. However, the DOT's description of how an addresser performs tasks is disjunctive: one can perform them by hand *or* by typing. In fact, VE Vandergoot explicitly stated, during his testimony, that an addresser could perform the work by hand. R. at 51. As such, there is no apparent conflict here. And, even if the Plaintiff could establish an apparent conflict concerning the addresser position, any such error would be harmless because the ALJ found that the Plaintiff's RFC also allowed him to perform the waxer and order clerk positions.

The Plaintiff's arguments concerning the waxer and order clerk positions are also unpersuasive. According to the DOT, a waxer "[b]rushes coat of wax on glass speedometer and radio dials, leaving stenciled numbers and figures free for etching," DOT Code 779.687-038, and an order clerk, *inter alia*,"[t]akes food and beverage orders over intercom system and records order on ticket," DOT Code 209.567-014. The DOT's descriptions of those two position contain no indicia that they require the full use of both hands. The Plaintiff's speculation that "both jobs likely require full use of both hands" is insufficient to show that there was an apparent conflict between VE Vandergoot's testimony and the DOT. *See Colvin v. Berryhill*, 734 F. App'x 756, 759 (2d Cir. 2018) (summary order) ("While these definitions indicate that the jobs identified by the vocational expert—survey worker, parking lot attendant, and ticket seller—require either frequent handling or constant fingering, they do not state that a worker must be able to perform such handling or fingering with both hands."); *Windsor v. Berryhill*, 369 F. Supp. 3d 450, 461–62 (E.D.N.Y. 2019) ("[T]he Court disagrees with the Plaintiff that requiring 'handling' implies ambidexterity, meaning that there is no apparent conflict between the VE testimony and the DOT.").

The Court finds that VE Vandergoot's testimony did not raise an apparent conflict with the DOT. Thus, no further inquiry by the ALJ was required. *See Salati v. Saul*, 415 F. Supp. 3d 433, 448 (S.D.N.Y. 2019) (ruling remand was not required where the plaintiff failed to identify a apparent conflict between the VE's testimony and the DOT).

Finally, the Court finds the instant case is distinguishable, factually, from *Lockwood*, where the Second Circuit found an apparent conflict between the VE's testimony and the DOT. In *Lockwood*, the VE testified that a claimant with a restriction on overhead reaching could perform the jobs at issue, but the DOT stated that the jobs at issue required "reaching" and a policy statement from Social Security defined reaching as "extending the hands and arms in any direction." *Lockwood*, 914 F.3d at 92 (finding an apparent conflict and explaining that in "both the 1985 Policy Statement and common usage, 'reaching' includes overhead reaching"). That apparent conflict—which the Second Circuit found necessitated remand—is simply not comparable to the issues raised by Plaintiff here.

**2. The Opinions of Dr. Enker and Dr. DiMaio**

Under the treating physician rule, the opinion of a claimant's treating physician as to the nature and severity of the claimant's impairments is given "controlling weight" so long as it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Green-Younger*, 335 F.3d at 106 (quoting 20 C.F.R. § 404.1527(d)(2)); *Bonneau v. Astrue,* No. 5:13-cv-26, 2014 WL 31301, at *5 (D. Vt. Jan. 3, 2014) (same).

An ALJ must provide "good reasons" not to grant controlling weight to a treating physician's opinion. *See Schaal v. Apfel*, 134 F.3d 496 at 503–04 (2d Cir. 1998). When an ALJ decides not to give a treating physician's opinion controlling weight, the ALJ should

"comprehensively set forth reasons for the weight assigned" to that opinion, considering the factors identified in the SSA regulations. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c). Those same factors are also considered when evaluating other medical opinion evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The Plaintiff raises arguments as two of his physicians, Dr. Paul Enker ("Enker") and Dr. Frank DiMaio ("DiMaio"). ECF No. 17. Dr. Enker had opined in a form dated October 2, 2013 (the "October 2 Form") that: the Plaintiff would need to use a cane and/or walker; the Plaintiff was unable to sit and stand for long periods of time; the Plaintiff was unable to climb stairs or walk long distances; and the Plaintiff's condition would prevent him from performing his job functions and require periodic absences. *Id.* at 19, 244–46. Dr. DiMaio had opined that: the Plaintiff's symptoms were severe enough to frequently interfere with his attention and concentration; the Plaintiff could never twist, stoop, crouch/squat, climb ladders, climb stars or push/pull: the Plaintiff could continuously sit for 1.5 hours and continuously stand for 1 hour and 15 minutes. he could sit, stand and walk for less than 2 hours total in an 8-hour day; he would need a job which permitted shifting positions at will from sitting, standing or walking; he would need to take an unscheduled break every hour in an 8-hour workday; he would need to use a cane or other assistive device while engaging in standing and walking; and he could occasionally lift and carry less than 10 pounds. *Id.*

The Plaintiff asserts that the ALJ improperly assigned little weight to the opinions of both doctors. *Id.* He claims that the ALJ's decision contains no evaluation of whether those physicians' opinions were supported by medically acceptable clinical and laboratory diagnostic techniques, or were inconsistent with other substantial evidence in the record. *Id.* at 20.

11

The Defendant argues that the ALJ properly considered Enker's opinion and reasonably gave it little weight. ECF No. 19 at 18. The Defendant contends, *inter alia*, that at the time Enker filled out the October 2 Form, the Plaintiff had made only one visit to his office, in which Enker's physician assistant, and not Enker himself, had examined the Plaintiff's left hip. *Id.* Along the same vein, the Defendant points to the record evidence showing the Plaintiff visiting DiMaio only once, undercutting DiMaio's alleged status as a treating physician. *Id.* at 20.

In reply, the Plaintiff argues for the first time that if the ALJ thought it was unclear regarding how long the Plaintiff could sit, stand, and walk, then the ALJ should have sought clarification from the Plaintiff's physicians. ECF No. 20 at 4.

The basis for the treating physician rule, as relevant here, is the "continuity of treatment he provides and the doctor/patient relationship he develops." *Mongeur*, 722 F.2d at 1039 n.2. This does not occur when a physician meets with a patient only once. *Id.*; *Vasquez v. Saul*, No. 16-CV-3610 (VSB) (DCF), 2019 WL 5682631, at *5 (S.D.N.Y. Nov. 1, 2019) ("[W]here a physician has seen a patient only 'once or twice,' his opinion 'should not be given the extra weight accorded a treating physician' because he does not have an ongoing relationship with the claimant sufficient to place him 'in a unique position to make a complete and accurate diagnosis of his patient.'") (citing *Mongeur*, 722 F.2d at 1039 n.2); *Pena Lebron v. Comm'r of Soc. Sec.*, No. 18-CV-125 (BCM), 2019 WL 1429558, at *16 (S.D.N.Y. Mar. 29, 2019); *Lacy v. Astrue*, No. 11-CV-4600 (MKB), 2013 WL 1092145, at *14 (E.D.N.Y. Mar. 15, 2013).

The ALJ, who referred to neither Dr. Enker nor Dr. DiMaio as treating physicians, correctly refrained from bestowing that designation upon them. Dr. Enker's P.A. examined the Plaintiff once prior to filling out the October 2 Form, and Dr. DiMaio examined the Plaintiff personally once. In neither case did these physicians build a relationship with the Plaintiff

12

significant or continuous enough to merit the treating physician rule's application. *See Castorina v. Saul*, No. 19-CV-991 (AJN) (BCM), 2020 WL 6781078, at *4 (E.D.N.Y. Nov. 18, 2020) (observing that where a doctor was "not yet" a plaintiff's treating physician, applying the treating physician rule was "inapposite") (internal quotation marks omitted); *Batista v. Comm'r of Soc. Sec.*, No. 16-CV-3629 (KAM), 2018 WL 4964102, at *28 (E.D.N.Y. Oct. 15, 2018).

That Dr. Enker and Dr. DiMaio do not merit the status of a treating physician defeats the Plaintiff's argument that the ALJ failed to provide sufficient reasons for not giving their opinions controlling weight. Moreover, given their limited relationship with the Plaintiff, the ALJ provided sufficient reasons for giving the opinions of both these doctors only limited weight.

Finally, the Court finds that the Plaintiff's argument that the ALJ was required to seek further clarification from these doctors is waived because the Plaintiff raised it for the first time in his reply memorandum. "'It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief.'" *See Anghel v. Sebelius*, 912 F. Supp. 2d 4, 13 (E.D.N.Y Dec. 13 2012) (quoting *Morgan v. McElroy*, 981 F. Supp. 873, 876 n.3 (S.D.N.Y. 1997)). In any event, in light of the Plaintiff's limited relationship with these two doctors and the other evidence in the record, the ALJ had no obligation to seek further clarification.

Accordingly, the Court rejects Plaintiff's claims concerning the opinions of Dr. Enker and Dr. DiMaio..

### 3. The ALJ's Determination of the Plaintiff's RFC

The Plaintiff asserts that the ALJ lacked substantial evidence to support his determination that he had the RFC to perform specific types of sedentary work. ECF No. 17 at 22. The Plaintiff argues that the ALJ failed to consider all of the impairments he found at step two, including his obesity. *Id.* at 22–25. The Plaintiff's medical records reveal the Plaintiff as being

13

six feet, one inch tall and weighing 230 pounds, although he testified at his hearing to weighing 250 pounds.. R. at 36, 160.

In the cross-motion, the Defendant maintains that the ALJ expressly considered the Plaintiff's obesity in evaluating his functional capacity when he ruled that the obesity caused the Plaintiff no more than minimal limitations. ECF No. 19 at 21. The Defendant also notes that the Plaintiff has not specified how his obesity affected his functioning, thus making any omission of obesity by the ALJ harmless error. *Id.*

In reply, Plaintiff contends that the ALJ issued only a conclusory statement about the Plaintiff's obesity. ECF No. 20 at 6. The Plaintiff also asserts that there was evidence indicating how obesity limited his functioning——namely, the treatment notes of his internist, Dr. Tara Singh ("Singh"), which detail the Plaintiff's obesity, including his diagnosis with type II diabetes. *Id.* at 7. Additionally, another of the Plaintiff's physicians had a detailed discussion with the Plaintiff about the importance of keeping a balanced diet, reducing his weight, and exercising. *Id.*

When determining a claimant's RFC, an ALJ is required to consider all medically determinable impairments, even those that are not "severe." 20 C.F.R. §§ 416.920(e), 416.945(a); *See Rosado v. Comm'r of Soc. Sec.*, No. 17-CV-2035 (PKC), 2018 WL 2229135, at *5 (E.D.N.Y. May 16, 2018). An ALJ must consider the effects of obesity on a claimant's ability to perform work "'where the record contains evidence indicating limitation of function due to obesity.'" *Negron v. Colvin*, No. 15-CV-2515 (ADS) (AKT), 2017 WL 1194470, at *5 (E.D.N.Y. Mar. 31, 2017) (brackets omitted) (quoting *Battle v. Colvin*, No. 13-CV-547 (JTC), 2014 WL 5089502, at *5 (W.D.N.Y. Oct. 9, 2014)).

In his decision, the ALJ noted the Plaintiff's diagnosis with type II diabetes "without complication and hyperlipidemia unspecified." R. at 13. The decision then cited to Singh's treatment records. *Id.* at 13, 257. Next, the ALJ indicated that the Plaintiff was clinically obese. *Id.* at 13. The ALJ concluded that both the Plaintiff's obesity and diabetes diagnosis constituted non-severe impairments because "they impose less than a minimal limitation on his functioning if any at all." *Id.*

The ALJ did not explicitly discuss these non-severe impairments again. However, the ALJ's again cited Singh's records in his discussion of the Plaintiff's RFC, R. at 15–16, which is sufficient to establish that ALJ also implicitly factored Singh's analysis of the Plaintiff's obesity into Plaintiff's RFC determination, *see White v. Berryhill*, 753 F. App'x 80, 81 (2d Cir. 2019) (summary order) (finding substantial evidence supported RFC determination where the ALJ relied on medical reports concerning obesity, even though "the ALJ did not explicitly discuss" the claimant's obesity); *see also Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011).

Additionally, Plaintiff has also not established how his obesity further limited his functioning, rendering any potential error harmless. *See White*, 753 F. App'x at 81; *Fullenweider-Harris obo Fullenwider v. Comm'r of Soc. Sec.*, No. 19-CV-424 (DB), 2020 WL 3440102, at *8 (W.D.N.Y. June 23, 2020). The Plaintiff points to evidence from multiple doctors that mention his obesity, including Singh, whom he visited on multiple occasions. However, these records—which, for example, note that the Plaintiff had high cholesterol and was advised of the importance of a healthy lifestyle—do not suggest a limitation more severe than those listed by the ALJ. The Court must uphold the Commissioner's findings of fact unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The ALJ's interpretation of the Plaintiff's obesity evidence was

15

reasonable. At best, the evidence concerning any potential limitations stemming from the Plaintiff's obesity "is susceptible to more than one rational interpretation," and under such circumstances, "the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

The Plaintiff also argues that the ALJ should have addressed the side effects of Oxycodone, an opioid medication taken by Plaintiff, which is not mentioned in the ALJ's decision. ECF No. 17 at 25. The Defendant argues that the record shows no evidence of the Plaintiff's having taken Oxycodone prior to September 7, 2016. *Id.* at 20. It further argues that the Plaintiff did not attribute any limitations to taking this medication. *Id.* at 20–21.

The Plaintiff is correct that the ALJ did not explicitly address Oxycodone in his decision. The Court, however, declines to remand the case on this basis.

The Plaintiff's testimony at the November 29, 2016 hearing revealed the following:

> Q Do you take any prescription medication for pain?
>
> A Yes, sir.
>
> Q What do you take?
>
> A They give me Oxycodone.
>
> Q Do you take it?
>
> A I take it here and there. I don't like the way it makes me feel afterwards.
>
> Q Okay. How many times have you actually taken the Oxycodone, let's say in the last week?
>
> A The last week, I took it two and I'm definitely going to have to take it today.

R. at 39–40.

Given the limited evidence of Plaintiff's Oxycodone use in the record, the ALJ's failure to incorporate any limitations from the Oxycodone into Plaintiff's RFC determination was not erroneous.

First, the Plaintiff offered this testimony in the present tense and characterized it as such in his motion papers. ECF No. 17 at 25 ("Mr. Sidney testified at the November 2016 hearing that he takes Oxycodone, an opioid, for his pain and that he does not like the way it makes him feel."), ECF No. 20 at 7 ("Regarding Mr. Sidney's pain medication, he testified at the November 2016 hearing that he takes Oxycodone, an opioid, for his pain.").

The Plaintiff never clearly testified that he was prescribed and used this medication in the three years between his alleged onset date and September 6, 2016, the period at issue here. As the Plaintiff's testimony is the only evidence in the record about Oxycodone, the record is devoid of any evidence clearly stating that he took this medication during the relevant period. The ALJ would not need to address the side effects of a medication that the Plaintiff did not take during the time period at issue.

Second, even assuming that Plaintiff's testimony about his Oxycodone usage is ambiguous as to when he took this medication, it was up to the ALJ to determine whether (and to what extent) to credit that testimony given that none of medical records indicate that Plaintiff was prescribed or used Oxycodone. Notably, the Plaintiff has not pointed to any medical records that reference Oxycodone. Given the Plaintiff's testimony that he takes Oxycodone "here and there" and the absence of any medical records or opinions that mention Oxycodone—the ALJ could have reasonably concluded that the Plaintiff's use of Oxycodone did not warrant the inclusion of any further limitations in the Plaintiff's RFC determination. Additionally, as the government points out, Plaintiff reported that he drove, and did not note any limitations on his

17

driving due to his Oxycodone use.  R. 41-42.  In determining whether substantial evidence exists, the court "defer[s] to the Commissioner's resolution of conflicting evidence."  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012); *McIntyre*, 758 F.3d at 149.  As with the case of the Plaintiff's obesity, the Court defers to the Commissioner's factual determination.  *See Nusraty v. Colvin*, 213 F. Supp. 3d 425, 435–36 (E.D.N.Y. 2016).

Accordingly, substantial evidence supports the ALJ's discussion of the Plaintiff's RFC.  Neither the ALJ's limited discussion of the Plaintiff's obesity or his failure to explicitly discuss Oxycodone was erroneous.

### III.  CONCLUSION

For the foregoing reasons, the Court denies the Plaintiff's Rule 12(c) motion and grants the Defendant's Rule 12(c) cross-motion.  The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: December 17, 2020
Central Islip, New York

                     _____ /s/ (JMA)
                     JOAN M. AZRACK
                     UNITED STATES DISTRICT JUDGE